UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CASS RIVER FARMS, LLC,

        Plaintiff,                        Case No. 16-cv-12269

v.                                            Honorable Thomas L. Ludington

HAUSBECK PICKLE COMPANY and
PRESIDENT TIMOTHY A HAUSBECK,

        Defendants.
_____/

**ORDER GRANTING IN PART MOTION TO DISMISS, STAYING AND
ADMINISTRATIVELY CLOSING CASE**

On June 20, 2016, Plaintiff Cass River Farms, LLC, ("Cass") filed a complaint against Defendants Hausbeck Pickle Co. ("Hausbeck") and Timothy A. Hausbeck, the president of the company. ECF No. 1. The complaint asserts five counts, all related to a contractual dispute between the parties over the delivery of and payment for several large shipments of banana and jalapeño peppers. Compl. at 5–10, ECF No. 1. Counts One, Two, and Three assert that Defendants' rejection of delivery and underpayment under the relevant contracts violated the Perishable Agricultural Commodities Act (PACA), 7 U.S.C. 499(e). Counts Four and Five assert standard breach of contract claims based on the same refusal to accept the deliveries.

Prior to Cass's filing of this suit, Hausbeck filed a complaint on April 21, 2016, in Saginaw County Circuit Court which named Cass as a defendant and alleged three counts of breach of contract, one count of tortious interference with a business relationship or expectancy, and one count of defamation. Compl. at 11, ECF No. 1. On June 21, 2016, Cass removed that action to federal court. *See Hausbeck Pickle Co. v. Cass River Farms, LLC*, No. 1:16-cv-12281.

On July 21, 2016, Hausbeck filed a motion to remand its suit to state court. On September 3, 2016, this Court granted that motion and remanded the suit to state court.

On July 22, 2016, Hausbeck filed a motion to dismiss this action, arguing that abstention pursuant to *Colorado River Water Conservation Dist. v. United States* is appropriate given the separate suit currently pending in state court. 424 U.S. 800 (1976). Because the state court action brought by Hausbeck contests the same material issues as this suit, the Court will stay this action.

## I.

This case arises out of a series of contracts the parties entered into regarding the sale of large quantities of banana and jalapeño peppers. Cass is a Michigan company that both grows peppers and enters into purchase contracts with peppers grows all over the world. Compl. at 1, 3. Hausbeck is another Michigan company that purchases peppers and then resells them to large-volume consumers, like restaurant chains. *Id.* at 1, 3. Hausbeck and Cass have a longstanding relationship and have entered into many contracts for the sale of peppers. *Id.* at 3. Both parties are suing the other in separate actions, each alleging that the other breached several contracts.

### A.

Cass's claims arise out of alleged breaches of two contracts the parties entered into, Contract 35 and Contract 1019. *Id.* Cass represents that those contracts created an obligation for Cass to deliver 10.5 million peppers to Hausbeck. *Id.* Pursuant to Contract 35, Cass contracted to deliver 2 million peppers to Hausbeck at $0.45 per pound. *Id.* at 4. Under Contract 1019, Cass agreed to provide 8.5 million pounds of peppers to Hausbeck at $0.42 per pound. *Id.* According to Cass, delivery on Contract 35 was not to begin until after April 1, 2016. *Id.* On June 9, 2016, Timothy Hausbeck emailed Cass and indicated that Hausbeck would accept only 8.5 million

pounds of peppers. *Id.* at 6. This email reflected Hausbeck's theory that Cass had breached Contract 35 by failing to timely deliver. *See* Hausbeck Email, ECF No. 1, Ex. 5. Cass argues that the email constituted an anticipatory repudiation of Contracts 35 and 1019. *Id.* Cass immediately responded, requesting that Hausbeck meet its contractual obligations under both contracts and accept delivery. *Id.* Cass also notified Hausbeck that it was asserting a claim to full payment under the contracts pursuant to the PACA. *Id.* When Cass began delivering peppers, Hausbeck accepted only 8.5 million pounds of peppers. *Id.* at 5–7. Further, Hausbeck paid only $0.42 per pound of peppers that were delivered, consistent with its obligations under Contract 1019 and not Contract 35. *Id.* Cass is now suing Hausbeck for rejecting delivery and underpaying pursuant to Contracts 35 and 1019 in violation of the PACA. Cass is also bringing common law breach of contract claims against Hausbeck.

**B.**

In the complaint filed in state court, Hausbeck alleges that Cass is the party who breached the contracts between them. Hausbeck Compl., ECF No. 1, Ex. 1. According to Hausbeck, delivery under Contract 35 was to occur during the winter 2016 season. *Id.* at 3. Delivery under Contract 1019 was to occur between April 20, 2016, and July 7, 2016. *Id.* at 4. Hausbeck alleges that Cass dramatically undersupplied Hausbeck during the winter 2016 season, which Hausbeck alleges ended on April 30, 2016. *Id.* at 7. Because Cass breached Contract 35, Hausbeck brought suit in state court on April 21, 2016. *Id.* at 1, 8–12. Hausbeck alleges that Cass's failure to timely deliver the peppers under Contract 35 resulted in Hausbeck losing a contract with Subway. *Id.* at 7. Hausbeck argues that it accepted pepper deliveries during the summer of 2016 pursuant only to Contract 1019.

**II.**

Hausbeck has filed a motion to dismiss in this case which asserts that because Cass's claims could be raised in the currently pending state court action, this Court should decline to exercise jurisdiction over this case. The general rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *McClellan v. Carland*, 217 U.S. 268, 282 (1910). *See also RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013) ("The Supreme Court has repeatedly held . . . that the mere pendency of a state-court case concerning the same subject matter as a federal case is not reason enough to abstain."). However, in *Colorado River*, the Supreme Court held that abstention by federal courts was justified by the need for judicial efficiency and federal-state comity in some limited circumstances where there was a "contemporaneous exercise of concurrent" jurisdiction by state and federal courts. 424 U.S. at 817. Still, because federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," *id.*, abstention is disfavored. Federal courts should decline to hear a case over which they have jurisdiction only in extraordinary and narrow circumstances where the justification for abstention is clear. *Colorado River*, 424 U.S. at 813; *RSM Richter, Inc.*, 729 F.3d at 557.

In order to determine whether the exceptional circumstances necessary to justify *Colorado River* abstention are present, a court must engage in a two-step inquiry. First, the court must determine whether the state proceeding is truly parallel to the federal case. *Crawley v. Hamilton Cty. Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984). The relevant question is not whether the state claim could "be modified so as to make it identical to the current federal claim." *Id.* Rather, the issue is whether the cases are currently parallel. *Id.* "[E]xact parallelism . . . is not required." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). Rather, the two

proceedings need only be "substantially similar." *Id.* (omitting citations). The parties in the two cases need not be identical.

*Bates v. Van Buren Twp.*, 122 F. App'x 803, 806 (6th Cir. 2004). If the state action is broader than the federal action, that only makes it "more likely that it will not be necessary for the federal courts to determine the federal question. *Id.* at 807. Broadly, the relevant inquiry is whether resolution of the state court action will resolve the contested issues in the federal action. *See Baskin v. Bath Twp. Bd. of Zoning Appeals*, 15 F.3d 569, 572 (6th Cir. 1994); *Wright v. Linebarger Googan Blair & Sampson, LLP*, 782 F. Supp. 2d 593, 603 (W.D. Tenn. 2011).

Second, the court must determine whether "judicial economy warrants abstention." *Blake v. Wells Fargo Bank*, NA, 917 F. Supp. 2d 732, 737 (S.D. Ohio 2013). The "decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983). The factors to be considered include:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; and (4) the order in which jurisdiction was obtained. . . . (5) whether the source of governing law is state or federal, (6) the adequacy of the state court action to protect the federal plaintiff's rights, (7) the relative progress of the state and federal proceedings, and (8) the presence or absence of concurrent jurisdiction.

*Romine v. Compuserve Corp.*, 160 F.3d 337, 340–41 (6th Cir. 1998) (citations omitted).

### III.

The state court action and federal court action are parallel. Further, a proper balancing of the factors outlined in *Colorado Water* and *Moses H. Cone* indicate that judicial economy warrants abstention. Accordingly, the Court will stay this case.

**A.**

To begin with, both suits involve the same parties. Although the plaintiff in the state court action is the defendant in the federal action, parallelism is present as long as the parties are "substantially similar." *Romine*, 160 F.3d at 340. Cass and Hausbeck are contesting the same dispute, albeit from slightly different perspectives, and thus the parties are substantially similar. *See CLT Logistics v. River W. Brands*, 777 F. Supp. 2d 1052, 1057 (E.D. Mich. 2011) (finding parallelism despite the plaintiffs in the federal case being defendants in the state court action).

Because the state court suit will resolve all contested legal and factual issues in both cases, the two cases are parallel. The basic dispute between the parties is as follows: Hausbeck argues that Cass did not fulfill its obligations under Contract 35 for peppers which were to be delivered in the winter and spring of 2016. Because of that breach, Hausbeck lost a contract with a customer. Accordingly, when Cass tried to deliver the peppers planted pursuant to Contract 35 that summer, Hausbeck no longer needed the peppers and rejected the shipment as untimely. Cass argues that the parties had agreed that delivery pursuant to Contract 35 would occur after April 1, 2016, and that Hausbeck represented to Cass that it would accept delivery of peppers under Contract 35 during the summer of 2016. Cass claims under the PACA that Hausbeck rejected the delivery without reasonable cause. Cass further claims under the PACA that Hausbeck failed to make full payment. Hausbeck argues that it paid for the peppers it had contracted for via Contract 1019 and paid the price specified in that contract. Accordingly, all claims in this federal action depend on the construction of Contracts 35 and 1019. Hausbeck alleges in state court that Cass failed to timely deliver under Contract 35. Cass alleges in this action that delivery was timely and that Hausbeck improperly rejected and underpaid Cass, in violation of Contracts 35 and 1019.

In other words, both actions involve, at their core, a standard state law contract dispute. If Hausbeck's argument that Cass's attempted delivery under Contract 35 was too late is correct, then Cass's PACA claims will necessarily fail. Conversely, if Cass's argument that its attempted delivery under Contract 35 was timely is accurate, then Cass will be likely entitled to relief under the PACA, absent other explanations for the rejection and underpayment. The threshold issue is identical in both the state and federal action. The mere fact that Cass asserts federal claims in the federal suit which have not been raised in the state court action does not defeat the parallelism between the suits. "[O]ne cannot merely advance a different legal theory to obtain a remedy and counter abstention." *Kopacz v. Hopkinsville Surface & Storm Water Util.*, 714 F. Supp. 2d 682, 688 (W.D. Ky. 2010) (citing *Crown Enterprises, Inc. v. Lambert*, No. 06-CV-13206, 2006 WL 2844445, at *2 (E.D. Mich. Sept. 29, 2006)). *See also Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit."). Although the parallelism analysis must be made by comparing "the issues in the federal action to the issues actually raised in the state court action, not those that might have been raised," the basic dispute in both actions here is identical. *Baskin*, 15 F.3d at 572. Unlike in *Baskin*, where parallelism was absent because the suits involved the same facts but different legal theories and different relief, the two cases here contest exactly the same facts and contest the legal construction of the same Contracts. *Id.* After a decision in the state court action, this Court would "have nothing further to do in resolving any substantive part of the case," at least with regard to construing the contracts. *Moses H. Cone Mem'l Hosp*, 460 U.S. at 28.

Cass has not yet brought a counterclaim in the state court action which alleges a breach of contract and asserts its PACA claims. Thus, the state court will be unable to completely and

finally resolve the federal claims currently pending before this Court. In *Walbridge Aldinger Co. v. Aon Risk Servs., Inc. of Pennsylvania*, the court found that the fact that the plaintiff in the federal suit had not brought any claims against the defendant in the state suit meant that parallelism was absent. No. 06 CV 11161 DT, 2006 WL 2376112, at *5 (E.D. Mich. Aug. 16, 2006). The *Walbridge* court's approach is supported by significant Sixth Circuit precedent which makes clear that parallelism is not present simply because the state court action could be made parallel by joining additional claims. *See Baskin*, 15 F.3d at 572; *Crawley*, 744 F.2d at 31.

However, the analysis in *CLT Logistics v. River West Brands* is most instructive in adressing the situation currently before the Court. 777 F. Supp. 2d 1052. The court in *CLT Logistics* framed the issue presented as follows: "whether a federal and state case are parallel where the federal case includes additional claims not asserted in the state case, but the two actions share a common, threshold issue that could dispose of all claims in both cases." *Id.* at 1058. In *CLT Logistics*, the threshold issue was a dispute over whether one of the parties had a license to use certain trademarks or had an ownership interest in those trademarks. *Id.* at 1054. If not, then Defendants would potentially be liable for trademark infringement. *Id.* Like in this case, then, there was a "substantial possibility that resolving [a] common issue [would] dispose of all claims." *Id.* at 1059. The *CLT Logistics* court found that, when dealing with an overlap of a common threshold issue, the "aims of judicial economy and comprehensive disposition" create "sufficient parallelism for a court to reach the next step in the analysis." *See also Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (upholding the entry of a stay under *Colorado River* because the state court decision would likely determine the outcome of the claims pending in federal court); *Grammar, Inc. v. Custom Foam Sys., Ltd.*, 482 F. Supp. 2d 853, 858 (E.D. Mich. 2007) (staying the case because "the resolution of the contractual rights and duties in

either of the pending cases will likely resolve the issues in the other case"); *One Up, Inc. v. Webcraft Techs., Inc.*, No. 87 C 3041, 1989 WL 118725, at *3 (N.D. Ill. Sept. 22, 1989) (finding that parallelism was present because the state case involved an issue which might have disposed of the federal claims).

For the same reasons, parallelism exists here. Cass's claims under the PACA are dependent on construction of the contracts between the parties. If Cass breached Contract 35, then Hausbeck's refusal to accept late delivery cannot be characterized as "without reasonable cause." 7 U.S.C. § 499(b)(2). Likewise, Hausbeck's refusal to pay the price negotiated for peppers in Contract 35 would not be wrongful. That issue is squarely before the state court. Thus, the principles which undergird the *Colorado Water* doctrine, including the interests in judicial economy, avoidance of piecemeal adjudication, and wise judicial administration, support a finding of parallelism. 424 U.S. at 819. Because the common threshold issue across the two actions is substantially likely to resolve the federal claims, there is sufficient parallelism to reach the second stage of the analysis. *CLT Logistics*, 777 F. Supp. 2d at 1059.

**B.**

Second, the various factors outlined in *Colorado River* and *Moses H. Cone* must be weighed. As already mentioned, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them," and so abstention can only be justified by exceptional circumstances. *Colorado River*, 424 U.S. at 817–18.

The parties agree that the state court has not assumed jurisdiction over any res or property. Further, the parties do not argue that state court is a more convenient forum. Thus, these factors do nothing to overcome the presumption that a federal court will exercise the jurisdiction is possesses.

The likelihood of piecemeal litigation if both actions proceed simultaneously is high. The danger of piecemeal litigation was the paramount consideration in *Colorado River*. *Moses H. Cone*, 460 U.S. at 19. "Piecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. As already mentioned, the threshold issue is which party breached its contractual obligations. Both courts will be required to construe the contracts. Accordingly, it is possible that, should the two courts come to different conclusions, conflicting adjudications regarding which party breached the contracts might arise. This not only threatens "'efficient adjudication'" but also places the legitimacy of the court system in jeopardy. *Id.* (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691 (7th Cir.1985)).

Likewise, the state court action was filed several months before the federal action. The state court's jurisdiction thus attached first. Additionally, the state court action has advanced further than the federal action. The parties have litigated the need for a temporary restraining order and preliminary injunction, the state court has entered a scheduling order, and the parties have exchanged witness lists. *See Hausbeck Pickle*, No. 16-cv-12881, ECF No. 1, at 50, 53–55, 138–56.

The claims in the state court action all arise out of state law. The claims in the federal action include both state law and federal claims. However, the federal claims are predicated on whether there was a breach of contract, which is the subject of the state law claims. The parties dispute whether, because of the existence of federal claims in the federal action, the state court action can adequately protect Cass's federal rights. "[T]he presence of federal-law issues must always be a major consideration weighing against surrender." *Moses H. Cone*, 460 U.S. at 26. There is a strong interest in favor of providing a federal forum for federal issues. Thus, the fact

that Cass clearly wishes to litigate its federal issues in federal court strongly favors an exercise of jurisdiction. However, the potentially determinative threshold issue in both cases is one of state law. Thus, the importance of providing a federal forum for Cass's action is mitigated. Further, if this case is stayed pending the state court's decision interpreting the contracts, this Court will still be able to later protect Cass's federal rights should the state court decision fail to resolve all outstanding questions.

Further, "the source-of-law factor has less significance . . . [where] the federal courts' jurisdiction to enforce [the law] is concurrent with that of the state courts." *Id.* at 25. The parties dispute whether the state court has concurrent jurisdiction over Cass's PACA claims. 7 U.S.C. § 499e(b) & (c)(5) both clearly contemplate concurrent jurisdiction for PACA claims. Section 499e(b) provides that "liability may be enforced . . . by suit in any court of competent jurisdiction; but this section shall not in any way abridge the remedies now existing at common law or by statute." Likewise, § 499e(c)(5) explained that federal district courts are "specifically" vested with jurisdiction over "actions by trust beneficiaries to enforce payment from the trust" which the PACA creates, but that language does not create *exclusive* federal jurisdiction for PACA claims. *See Sterling v. First Intermark, Inc.*, No. 92-1448, 1992 WL 352614 (5th Cir. 1992). Accordingly, concurrent federal jurisdiction exists. However, the fact that Congress explicitly provided for federal jurisdiction for the PACA claims indicates that Congress believed it was important that PACA claimants have access to a federal forum. Thus, although the presence of concurrent state court jurisdiction over Cass's PACA claims supports abstention, that support is mitigated by Congress's apparent intent to protect the existence of a federal forum for PACA claims.

In short, factors one and two, which focus on the convenience of the forum, indicate that both forums are equally appropriate. Thus, those factors do nothing to overcome the presumption that this Court should exercise its jurisdiction and hear the case. Factor three, the threat of piecemeal litigation, strongly supports abstention. Factor four, the order in which jurisdiction was obtained, and factor seven, the relative progress of state and federal proceedings, both provide modest support for abstention. Because Cass's action involves federal claims, factor five supports the exercise of jurisdiction. However, the weight to be given to factor five is lessened because a threshold state law breach of contract issue must be resolved before the federal claims are reached. Factor six, which analyzes the state court's ability to protect the federal plaintiff's rights, offers some reason to exercise jurisdiction. There is every reason to believe the state court would provide a fair and efficient adjudication of the parties' claims. However, because the federal claims are only brought in the federal suit, the state court will be unable to actually address them. This supports the exercise of jurisdiction. *See Gentry v. Wayne Cty.*, No. 10-CV-11714, 2010 WL 4822749, at *6 (E.D. Mich. Nov. 22, 2010). But as discussed below, the Court believes that a stay will adequately protect Cass's federal rights. Finally, because there is concurrent jurisdiction over PACA claims, factor eight supports abstention.

Viewed as a whole, the *Colorado River* analysis justifies abstention. Several factors, especially the threat of piecemeal litigation, strongly support abstention. Conversely, the strongest argument in favor of exercising jurisdiction is that Cass has brought federal claims in a federal forum. Ordinarily, that would be enough to prevent abstention. However, in this situation, the state law breach of contract claims provide a common threshold issue between the two cases. If the Court were to exercise jurisdiction, the contracts between the parties would be interpreted twice and potentially in contradictory ways. That result would not only waste of judicial

resources, but it would also harm the legitimacy of the court system. *Romine*, 160 F.3d at 341. Because both actions involve a threshold issue of state law, and because both actions cannot proceed without interpreting the parties' contracts, the fact that Cass has also brought federal claims does not strongly support the exercise of jurisdiction. In short, factors three, four, seven, and eight all support abstention, with factor three providing clear justification for abstention. The remaining factors, however, do not offer persuasive reasons to exercise jurisdiction. Although the "[t]he Court's task "is not to find some substantial reason for the exercise of federal jurisdiction," but to determine whether exceptional circumstance clearly justify abstention, those circumstances exist here. *Gentry v. Wayne Cty.*, No. 10-CV-11714, 2010 WL 4822749, at *6 (E.D. Mich. Nov. 22, 2010).

## C.

Because abstention is appropriate, the next question is whether the case should be stayed or dismissed. Generally, when a federal court abstains in favor of a state court, the federal court should stay the action instead of dismissing it. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 n.2 (1995). A stay is preferable in that situation because "it assures that the federal action can proceed without risk of a time bar if the state case, for any reason, fails to resolve the matter in controversy." *Id.* In this case, imposing a stay will further the foundational principles of the *Colorado River* abstention doctrine by both avoiding piecemeal litigation and ensuring that Cass retains a federal forum to litigate its federal claim. The pending state court action has progressed further than the federal action and consequently the state court is likely to render a decision construing the parties' contracts before this Court can. That decision will almost certainly address the very issue implicated by Cass's PACA claims: whether Hausbeck's refusal to accept delivery and make payment under Contract 35 was a breach of contract. Rather than risking two

contradictory constructions of the same contracts, this Court will stay the case pending the resolution of the state court action. Once the state court construes the contracts, this Court will resolve Cass's federal claims pursuant to that decision if consistent with principles of res judicata and collateral estoppel. Of course, Cass is free to simply assert its federal and state law claims against Hausbeck as counterclaims in the state law suit. In either scenario, judicial economy is furthered, piecemeal litigation is avoided, the legitimacy of the judicial system is protected, and Cass's decision to litigate federal claims in a federal forum is respected. Thus, this suit will be stayed pending resolution of the state court action.

**IV.**

Accordingly, it is **ORDERED** that Defendants' Motion to Dismiss is **GRANTED in part.**

It is further **ORDERED** that this action is **STAYED** pending the resolution of the state court action, *Hausbeck Pickle Co. v. Cass River Farms, LLC,* No. 16-029606-CB, at which time the stay may be lifted on motion of either the plaintiff or defendant.

It is further **ORDERED** that, to avoid administrative difficulties, the Clerk of Court close this case for statistical purposes only. Nothing in this order or in the related docket entry shall be considered a dismissal of this matter.

    October 12, 2016                          s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 12, 2016.

                         s/Kelly Winslow for
                         MICHAEL A. SIAN, Case Manager